798 F.2d 389
 6 Fed.R.Serv.3d 613
 SANGUINE, LTD., Plaintiff-Appellant,
v.
UNITED STATES DEPARTMENT OF INTERIOR, Bureau of Indian
Affairs, United States Geological Survey, Stanley
Speaks, and F.L. Stelzer, Defendants-Appellees,
Delra M. Toohey, Mae Lamar Davis, Imogene Birch, Eva Louise
Warden, Richard Guy, Wildena F. Guy Moffer,
Willard B. Guy, Berdina Holder, and
Ronnie F. Birch, Sr.,
Defendants in Intervention-Appellees.
 Nos. 85-1645, 86-1121.
 United States Court of Appeals,
Tenth Circuit.
 Aug. 1, 1986.
 
 Kent L. Jones (Orval E. Jones, with him on briefs), of Hall, Estill, Hardwick, Gable, Collingsworth & Nelson, Inc., Tulsa, Okl., for plaintiff-appellant.
 Laura E. Frossard, Atty., Dept. of Justice, Washington, D.C. (F. Henry Habicht II, Asst. Atty. Gen., Edward J. Shawaker, Atty., Dept. of Justice, Washington, D.C., and J. McLane Zanone, of counsel, Atty., U.S. Dept. of Interior, Washington, D.C., with her on brief), for defendants-appellees.
 Patricia L. Brown of Wilkinson, Barker, Knauer & Quinn, Washington, D.C. (Jap W. Blankenship, of counsel, of Fellers, Snider, Blandenship, Bailey & Tippens, Oklahoma City, Okl., with her on brief), for defendants in intervention-appellees.
 Before BARRETT, MOORE and BALDOCK, Circuit Judges.
 JOHN P. MOORE, Circuit Judge.
 
 
 1
 This is an appeal from an order granting the intervenors' motion to vacate a judgment entered prior to intervention. The case presents the question of whether an intervenor whose interests were inadequately represented by a party defendant prior to intervention may seek to vacate decrees entered before intervention was granted. We hold that the circumstances of this case make mandatory the vacation of those decrees, and we affirm.
 
 
 2
 The genesis of this action was a rule adopted by the Anadarko Area Director of the Bureau of Indian Affairs (BIA) to require the renegotiation and amendment of all expiring nonproducing oil and gas leases on trust or restricted lands within his jurisdiction to provide: "any non-producing zones shall be released at the end of the primary term of said lease." Although existing leases previously had been extended by communitization,[1] which lessees deemed economically necessary, the rule changed the lease forms to require their renegotiation regardless of communitization.
 
 
 3
 Plaintiff Sanguine, Ltd. (Sanguine), an oil and gas exploration company, filed this action to contest the rule. Defendants were the United States Department of Interior, as parent agency of the BIA, and others. No Indian landowners or lessors were made parties, although their interests were nominally represented by the government. Sanguine sought a preliminary injunction staying the implementation of the rule against certain of its leases which were about to expire. Sanguine alleged it would have to forfeit certain lease rights unless drilling operations were immediately commenced. After a hearing on the motion during which counsel for the government defendants agreed the Area Director's actions were unlawful[2] and essentially consented to the relief, the district court granted the injunction. Thereafter, the parties entered into a settlement of the suit stipulating the rule and the lease form required by the rule were invalid and could not be applied to Sanguine's leases. Based upon that stipulation, the court then entered a consent decree declaring the rule invalid and permanently enjoining its enforcement against Sanguine. The decree further required the defendants to approve communitization agreements submitted by Sanguine in the form used prior to adoption of the rule.
 
 
 4
 Thereafter, nine members of the Wichita and Affiliated Tribes of Oklahoma, owners of restricted Indian lands and lessors to Sanguine, filed a motion to intervene as a matter of right pursuant to Fed.R.Civ.P. 24(a)(2). The motion was denied, and the intervenors appealed. We held the denial of the motion to intervene was improper and reversed. Sanguine, Ltd. v. United States Department of Interior, 736 F.2d 1416 (10th Cir.1984) (Sanguine I ). We decided that intervention was proper because the government not only inadequately represented the Indian lessors whose interests were entrusted to it but also "in effect conceded the case at the outset." Id. at 1419.[3] We further held the intervenors had vested interests in the subject of the suit sufficient to justify intervention. With these holdings, we reversed the order denying the motion to intervene, remanded the case, and directed intervention.
 
 
 5
 Upon remand, the intervenors moved to vacate the consent decree and permanent injunction. The district court, interpreting our holding in Sanguine I to mandate the vacation of its prior orders, granted the intervenors' motion to allow the case to proceed on its merits. This appeal followed.
 
 
 6
 Sanguine contends the trial court's determination was erroneous for three reasons. First, the intervenors could have timely sought an appeal from the initial consent decree but chose not to do so. Second, as a matter of law, an order granting intervention does not include the right to relitigate the merits of prior orders. Third, as a parallel, Sanguine argues the intervenors do not have the right to contest the validity of prior decrees. We do not find these arguments compelling.
 
 
 7
 Sanguine offers no authority supporting its claim that the intervenors who were not parties to the proceedings could have appealed the original order. Moreover, given the posture of this case, the argument begs the issue.
 
 
 8
 We held in Sanguine I intervention should have been granted as a matter of right. The only issue now is what effect that intervention has on the pendency of the case. To state the question in a different form: if the district court did not vacate its prior orders, of what value is the right of intervention we held exists in this case? Left unaffected, the prior orders resolved the validity and enforceability of the rule. Yet, these precise issues, we stated in Sanguine I, were of sufficient interest to warrant intervention.
 
 
 9
 To buttress its argument that the intervenors could not challenge orders entered prior to intervention, Sanguine cites two cases: Arizona v. California, 460 U.S. 605, 103 S.Ct. 1382, 75 L.Ed.2d 318 (1983), and Nevada v. United States, 463 U.S. 110, 103 S.Ct. 2906, 77 L.Ed.2d 509 (1983). Neither case is apposite.
 
 
 10
 In Arizona, the Supreme Court held that Indians who were permitted to intervene in an original proceeding in which their interests were previously represented by the government could not relitigate a factual question determined thirty years prior to intervention. The Court held the intervenors' interests had been adequately represented by the government; thus, they were bound by the prior adjudication. The Court reached the same conclusion in Nevada, holding res judicata barred relitigation of water rights previously determined in a proceeding in which the intervenors had been adequately represented by the United States. Those cases are readily distinguished by the adequacy of the representation afforded the intervenors.
 
 As we noted in Sanguine I:
 
 11
 Given appellants' interest in enforcing the challenged ruling, it is clear that they are so situated that the consent decree "may as a practical matter impair or impede" their ability to protect that interest. The consent decree enjoins the government from [enforcement of the rule], and we perceive no means by which appellants could compel the government to violate the decree. Moreover, ... judicial review of agency action may as a practical matter afford the applicant much less protection than the opportunity to participate in the proceedings to uphold the agency actions in the first place.
 
 
 12
 Sanguine, 736 F.2d at 1420 (citations omitted). Since the government did not contest Sanguine's challenge of the rule and the issues essential to the intervenors were resolved by consent decree and not adversary litigation, this case presents a unique situation in which prejudice to the intervenors can be avoided only by setting aside the prior judgment and allowing the opportunity to litigate the merits of the case.
 
 
 13
 It must be noted that these issues have not been "litigated" in the true sense; therefore, we are not faced with a "relitigation" of the prior decree. Since the intervenors were not adequately represented in the first instance, the principle of res judicata does not apply to them. Parklane Hosiery Co., Inc. v. Shore, 439 U.S. 322, 327 n. 7, 99 S.Ct. 645, 649 n. 7, 58 L.Ed.2d 552 (1979) ("It is a violation of due process for a judgment to be binding on a litigant who was not a party or a privy and therefore has never had an opportunity to be heard."); O'Hare v. General Marine Transport Corp., 740 F.2d 160, 167 (2d Cir.1984), cert. denied, --- U.S. ----, 105 S.Ct. 1181, 84 L.Ed.2d 329 (1985). The import of Sanguine I is to provide the intervenors with a full hearing on issues affecting their valuable property rights, and the district court properly balanced the competing interests to effect this purpose.
 
 
 14
 AFFIRMED.
 
 
 
 [1]
 "Communitization" is a form of pooling of leases within an approved drilling and spacing unit which results in economic advantages not otherwise available to lessees. Additionally, production anywhere within the unit extends the duration of any lease within the unit beyond the primary term
 
 
 [2]
 See Sanguine, Ltd. v. United States Dept. of Interior, 736 F.2d 1416, 1419 (10th Cir.1984)
 
 
 [3]
 Sanguine attempts to finesse this holding by stating in its opening brief that we simply held the trial court had "applied the wrong standard for determining the right to intervene." This is not the import of the case. Although we did not question whether the government violated its trust duty, we found it did not represent the lessor's interests in conceding the case